UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MISFIT COFFEE COMPANY, LLC,               Case No. 23-CV-0252 (PJS/JFD)

        Plaintiff,

v.                                                                    ORDER

TONY DONATELL d/b/a THE MISFITS
HOSPITALITY COLLECTIVE,

        Defendant.

        Christopher Young and Tyler Hartney, LARKIN HOFFMAN, for plaintiff.

        Plaintiff Misfit Coffee Company, LLC ("Misfit") filed this trademark-infringement lawsuit against defendant Tony Donatell on February 1, 2023. *See* Compl., ECF No. 1. Donatell waived service and acknowledged that he had 60 days from March 23, 2023 to file a responsive pleading. *See* Waiver of Service of Summons, ECF No. 6. On March 29, 2023, counsel for Donatell joined in a stipulation for a permanent injunction, *see* Stipulation for Permanent Inj., ECF No. 7, and the Court subsequently entered the agreed-upon injunction. *See* Order for Permanent Inj., ECF No. 9. On May 2, 2023—before Donatell was required to respond to the complaint—Misfit filed and electronically served an amended complaint. *See* Am. Compl., ECF No. 11. Donatell never filed a response to either the original or amended complaint, and he has

not otherwise participated in this litigation (except as described above). At Misfit's request, the Clerk of Court entered default on June 6, 2023. *See* ECF No. 16.

This matter is now before the Court on Misfit's motion for default judgment. The Court held a hearing on the motion on August 7, 2023. Donatell did not appear or file a brief. The brief filed by Misfit addressed only liability and damages for (1) breach of contract and (2) trademark infringement and cybersquatting under the Lanham Act. *See* Mem. Supp. Mot. Default J. 14–16, ECF No. 20. At the hearing on its motion, Misfit agreed to the dismissal of Counts IV and VI–XI of the amended complaint without prejudice. Accordingly, and for the reasons stated below, the Court will enter default judgment on Counts I, II, III, and V of the amended complaint; dismiss Counts IV and VI-XI without prejudice; and award damages and attorney's fees as explained below.

I. ANALYSIS

*A. Liability*

The allegations in the complaint—which the Court must take as true, *see Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010)—sufficiently establish Donatell's liability for breach of contract, infringement of U.S. Trademark Registration No. 6,466,477 ("the '477 Registration"), infringement of U.S. Trademark Registration No. 6,466,478 ("the '478 Registration"), and cybersquatting. Misfit generally alleges that Donatell agreed in settling a prior infringement action to cease using the marks protected by the '477 and

'478 Registrations and to cease using the infringing domain name <themisfitcollective.co>. *See* Am. Compl. ¶ 25.  Misfit further alleges that Donatell continued to use the protected "Misfit" marks in promotional materials for his restaurants, continued to use the domain name <themisfitcollective.co> to reroute traffic to the website of one of his restaurants, and even launched a new website for his restaurant group using the domain name <misfitshospitalitycollective.com>. *See* Am. Compl. ¶¶ 34–45.

In the parties' Stipulation for Permanent Injunction, Donatell conceded that he was liable for breaching the settlement agreement and for infringing the '477 and '478 Registrations.  *See* ECF No. 7 ¶ 1.  Even setting that aside, though, the allegations in the complaint sufficiently show that Misfit "has a valid, protectible mark and that there is a likelihood of confusion between its mark and the marks that the defendants were using."  *Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*, 908 F.3d 313, 322 (8th Cir. 2018) (quotation omitted).  The allegations of Donatell's knowing misuse of the challenged domain names—particularly to direct traffic to the website for his own restaurant—also satisfy the requirements for a cybersquatting claim.  *See, e.g.*, 15 U.S.C. § 1125(d)(1)(A) (requiring proof that a defendant with "a bad faith intent to profit from" a distinctive or famous mark "registers, traffics in, or uses a domain name" that is "identical or confusingly similar" to that mark); *id.* § 1125(d)(1)(B)(i) (providing non-

exclusive list of factors for courts to consider in determining bad faith, including the defendant's intent to divert consumers from the mark owner's online location); *Coca-Cola Co. v. Purdy*, 382 F.3d 774, 783 (8th Cir. 2004) ("It is the challenged domain name and the plaintiff's mark which are to be compared" in determining similarity).

### B. Attorney's Fees

The settlement agreement that ended the parties' prior litigation allows a party to recover attorney's fees and costs incurred in connection with an action for a breach of that agreement. *See* Am. Compl. ¶ 31. Having established a breach of that agreement, Misfit seeks $51,618.90 in attorney's fees and costs. *See* Hartney Decl. ¶ 9, ECF No. 21. Based on a review of the billing records submitted by Misfit in support of its claim for attorneys' fees, the Court finds that $51,618.90 is a reasonable fee in light of prevailing market rates for the legal services required to prosecute this action.[1] Therefore, the Court will award Misfit the attorney's fees and costs it requests.

---

[1]Misfit filed redacted copies of its billing records on the docket, *see* Hartney Decl. Ex. A, ECF No. 21-1, and submitted unredacted copies to chambers for in camera review. Misfit failed to submit an unredacted copy of its June 15, 2023 bill for $5,482, but given that the other billing records were unproblematic and that the June 15 bill likely covers much of the work that went into preparing Misfit's motion for default judgment, the Court will not penalize Misfit for this inadvertent omission.

*C. Statutory Damages*

Misfit seeks statutory damages on its infringement and cybersquatting claims (Counts II, III, and V) pursuant to 15 U.S.C. § 1117, which states in relevant part:

> (c)  Statutory damages for use of counterfeit marks
>
> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of–
>
>> (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>>
>> (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.
>
> (d)  Statutory damages for violation of section 1125(d)(1)
>
> In a case involving a violation of section 1125(d)(1) of this title, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just.

*Id.* § 1117 (c)–(d).  Misfit seeks a total of $20,000 in damages on Counts II and III ($10,000 per infringed mark) and the statutory maximum of $200,000 ($100,000 per infringing domain name) on Count V's cybersquatting claim.

Unfortunately for Misfit, § 1117 does not entitle it to statutory damages on Counts II and III.  Section § 1117(d) obviously does not apply because that provision is limited to § 1125(d)(1) cybersquatting violations, and Counts II and III allege trademark infringement in violation of 15 U.S.C. § 1114.  *See* Am. Compl. ¶¶ 58, 64.  Section 1117(c) applies only to "a case involving the use of a counterfeit mark," *id.*, which the Lanham Act defines as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark."  *Id.* § 1127.  Misfit's complaint does not even contain the word "counterfeit," let alone establish that Donatell used a counterfeit mark.  Meanwhile, the cases under the Copyright Act to which Misfit cites in its memorandum are of no help in applying the Lanham Act.

"A counterfeit is . . . far more similar to the registered mark than a mark that barely infringes it, and so an infringing mark is not necessarily also a counterfeit." *Sturgis Motorcycle Rally, Inc.*, 908 F.3d at 340 (citing 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 25:15.50 (5th ed. 2018)).  "The essence of counterfeiting is that the use of the infringing mark seeks to trick the consumer into believing he or she is getting the genuine article, rather than a colorable imitation."

-6-

*Coty v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 468 (S.D.N.Y. 2017).  According to the allegations in the complaint, Donatell "sought to capitalize on [Misfit's] goodwill by creating customer confusion between the two companies' products," *id.* at 469, but as in *Coty*, the Court cannot conclude that Donatell tried to trick consumers into believing that they were purchasing Misfit's goods and services from his restaurant group.  Statutory damages under 15 U.S.C. § 1117(c) are thus not available, and because Misfit has offered no evidence of "defendant's profits" or "any damages sustained by the plaintiff," *id.* § 1117(a), the Court has no basis on which to award damages on the trademark-infringement claims in Counts II and III.[2]

Misfit is still entitled under § 1117(d) to recover statutory damages on its cybersquatting claim (Count V), but the Court finds its request for the statutory maximum to be excessive.  On the one hand, Donatell's willful cybersquatting clearly violated the parties' prior settlement agreement, demonstrating some level of contempt for the judicial system and edging him toward "serial cybersquatter" status.  *Verizon California Inc. v. Onlinenic, Inc.*, No. C 08–2832 JF (RS), 2009 WL 2706393, at *3 (C.D. Cal. Aug. 25, 2009) (observing that courts determining statutory damages for cybersquatting often consider egregiousness or willfulness of violations, efforts to conceal infringing activities, status as serial cybersquatter, and attitude of contempt toward court).  On the

---

[2]A plaintiff may also recover "the costs of the action" under 15 U.S.C. § 1117(a), but the Court will already be awarding such costs on Count I.

other hand, there is no reason to believe that Donatell's conduct has had or will have any impact beyond the Twin Cities—or, for that matter, much impact within the Twin Cities. It is possible (although perhaps not probable) that Donatell profited from or even damaged Misfit's goodwill, but it is difficult to imagine a consumer searching for Misfit Coffee Company, landing on <themisfitcollective.co> or <misfitshospitalitycollective.com>, and being anything but annoyed.

In light of these considerations, the Court finds that a statutory damages award of $25,000 per infringing domain is adequate and consistent with the practice of courts in roughly similar cases. *See, e.g.*, *Journey Grp. Cos. v. Sioux Falls Constr., LLC*, No. CIV 16–4125, 2017 WL 1376369, at *6 (D.S.D. Apr. 12, 2017) (awarding $20,000 for infringing domain where infringer was minor local competitor to plaintiff); *Digby Adler Grp. LLC v. Image Rent a Car, Inc.*, 79 F. Supp. 3d 1095, 1108 (N.D. Cal. 2015) (awarding $25,000 in statutory damages where infringing domain was nearly identical to plaintiff's and blatantly intended to divert traffic from direct competitor); *Doctor's Assocs., Inc. v. Subway.SY LLC*, 733 F. Supp. 2d 1083, 1088 (D. Minn. 2010) (awarding $25,000 per infringing domain for infringement of international sandwich chain's mark); *Verizon California*, 2009 WL 2706393, at *3–6 (referring to per-domain award of $50,000 as "large award of statutory damages").

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1. Plaintiff's motion for entry of a default judgment [ECF No. 17] is GRANTED as to Counts I, II, III, and V of the amended complaint [ECF No. 11].

2. Defendant is liable to plaintiff in the amount of $50,000 in statutory damages and $51,618.90 in attorney's fees and costs, for a total judgment of $101,618.90.

3. Counts IV and VI–XI of the complaint [ECF No. 11] are DISMISSED WITHOUT PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  October 19, 2023                              s/Patrick J. Schiltz
                                                      Patrick J. Schiltz, Chief Judge
                                                      United States District Court